**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                                    Elisabeth A. Shumaker
        Clerk                                                                                   Chief Deputy Clerk

September 16, 1999


**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   98-2231, *Giron v. Corrections Corporation of America*
          Filed on September 10, 1999

          The last sentence on page 5 of the slip opinion is corrected to read as follows:

          Nor does she appeal the district court's grant of judgment as a matter
          of law in favor of Warden Newton on the negligence claim, nor the
          jury's finding that CCA was not negligent.

A corrected copy of page 5 is attached.

                                              Sincerely,

                                              Patrick Fisher, Clerk of Court


                                              By:   Keith Nelson
                                                    Deputy Clerk


encl.

F I L E D
United States Court of Appeals
Tenth Circuit

SEP 10 1999

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

TANYA GIRON,

      Plaintiff-Appellant,

vs.

CORRECTIONS CORPORATION OF
AMERICA, a Delaware corporation;
THOMAS NEWTON, Warden;
DANNY TORREZ, Corrections
Officers in their individual capacities,

      Defendants-Appellees.

No. 98-2231

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-96-980-LH)

Paul J. Kennedy (Mary Y.C. Han and Kristin Morgan-Tracy with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellant.

Gail Gottlieb, Sutin, Thayer & Browne, Albuquerque, New Mexico, for Defendants-Appellees Corrections Corporation of America and Thomas Newton.

Mark S. Jaffee, Lassen, Jaffee & Stiff, Albuquerque, New Mexico, for Defendant-Appellee Danny Torrez.

Before **EBEL**, **KELLY**, and **LUCERO**, Circuit Judges.

**KELLY**, Circuit Judge.

After the alleged rape of Plaintiff-Appellant Tanya Giron by Defendant-Appellee Danny Torrez, a corrections officer at the New Mexico Women's Correctional Facility ("NMWCF") where Ms. Giron was incarcerated, Ms. Giron brought the following claims in district court: (1) a 42 U.S.C. § 1983 claim against Mr. Torrez, alleging that the rape constituted excessive force in violation of her Eighth Amendment rights (count I); (2) a § 1983 claim against Defendant-Appellees Thomas Newton and Corrections Corporation of America ("CCA") for deliberate indifference to the substantial risk that Ms. Giron would be sexually assaulted, given the segregation unit's design and staffing (count II); (3) a § 1983 claim against Warden Newton and CCA for failure to provide Ms. Giron with adequate medical care after the alleged rape (count III); (4) assault, battery, false imprisonment and intentional infliction of emotional distress by Mr. Torrez (count IV); (5) negligence on the part of CCA and Warden Newton for failing to institute appropriate safeguards against the sexual assault of female inmates by prison employees (count V), and (6) statutory liability on the part of CCA pursuant to N.M. Stat. Ann. § 33-1-17(D)(2) & (3) (Michie 1998 Repl. Pamp.) (count VI).

The district court granted summary judgment to CCA and Warden Newton on counts II and III. The case then proceeded to trial. At the close of Ms. Giron's case, the district court granted judgment as a matter of law in favor

Warden Newton on the negligence claim, count V. The case was submitted to the jury on the § 1983 and intentional tort claims against Mr. Torrez and the negligence claim against CCA. The jury returned a verdict for these Defendants on all counts, and judgment was entered.

On appeal, Ms. Giron contends that the district court erroneously granted summary judgment to CCA and Warden Newton on her § 1983 "conditions of confinement" claims, ignoring evidence that the design of the NMWCF segregation unit placed female inmates at substantial risk of sexual assault. She also argues that the district court deprived her of a fair trial by erroneously instructing the jury on the issue of consent. Finally, she challenges the jury instruction on her §1983 claim against Mr. Torrez. According to Ms. Giron, the district court improperly instructed the jury that, to find Mr. Torrez liable for using excessive force in violation of the Eighth Amendment, it must find both that (1) he forced her to have sexual intercourse and (2) the use of force was applied maliciously and for the purpose of causing harm. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for a new trial on the § 1983 claim against Mr. Torrez.

## Background

On May 26, 1994, Mr. Torrez had sexual intercourse with Ms. Giron in her

cell at NMWCF, while he worked as a corrections officer and she was an inmate in the segregation unit. Ms. Giron claims that Mr. Torrez raped her, whereas he characterizes the act as consensual. There were no eyewitnesses. Ms. Giron reported the alleged rape to all levels of authority at NMWCF and immediately underwent medical examination and treatment. She then brought suit in district court against CCA, Warden Newton, and Mr. Torrez.

Warden Newton and CCA moved for partial summary judgment on counts II and III. In response, Ms. Giron offered evidence that the segregation unit was designed so that male officers in the control center could see each female inmate's head, shoulders, torso above the breasts, and legs below the thigh as she undressed to shower. The placement of the showers also prevented officers in the control center from observing persons entering or leaving Ms. Giron's cell. In her deposition, Ms. Giron's expert, Kathryn Monaco, stated that these "unnecessary" design features "heighten[ed] the sexuality and [made] it more likely that [a rape would] occur." Aplt. App. at 122-23. Moreover, the lack of food slots in cell doors in the segregation unit required officers to enter the cells to deliver and retrieve food trays. Ms. Monaco opined that this situation created "a security risk to the staff and offenders," id. at 124, and that inadequate staffing exacerbated the danger.

The district court granted summary judgment for CCA and Warden Newton

on counts II and III, holding that the undisputed evidence did not demonstrate failure to provide reasonably safe prison conditions (count II) and Ms. Giron was given legally-adequate medical examination and psychological counseling (count III). The case then went to trial on the remaining claims, and after the district court granted judgment as a matter of law to Defendant Newton, the jury found no liability on the part of Defendants Torrez and CCA, the only remaining Defendants.

Ms. Giron challenges the grant of summary judgment on her § 1983 claims against CCA and Warden Newton. The remainder of her appeal centers on three jury instructions given at trial – Instruction No. 8 on Mr. Torrez' use of excessive force in violation of Ms. Giron's Eighth Amendment rights under § 1983; Instruction No. 12, defining "consent"; and Instruction No. 13, defining "effective consent." Although Ms. Giron argues that the consent instructions deprived her of a fair trial, she does not appeal the jury verdict on her intentional tort claims. Nor does she appeal the district court's grant of judgment as a matter of law in favor of Warden Newton on the negligence claim, nor the jury's finding that CCA was not negligent.

## Discussion

I. Conditions of Confinement

Ms. Giron appeals from the grant of summary judgment to CCA and Warden Newton on her § 1983 "conditions of confinement" claims. She first contends that the court "discounted copious evidence" when it concluded that Defendants were not deliberately indifferent to a substantial risk that she would be sexually assaulted at NMWCF. Aplt. Br. at 18.

According to Defendants, we are precluded from reviewing this issue because the district court granted judgment as a matter of law in favor of Defendant Newton on the negligence claim and the jury likewise rendered an adverse special verdict against Ms. Giron on her negligence claim against Defendant CCA. Ms. Giron did not meet the lesser burden of proving negligence. See Bowen v. City of Manchester, 966 F.2d 13, 17 (1st Cir. 1992) ("The 'deliberate indifference' standard means more than simple negligence."). Because she does not appeal from these adverse determinations, Defendants argue, she may not contend that a reasonable jury could find them deliberately indifferent under § 1983. Ms. Giron's only response is that the jury was required to find liability on Mr. Torrez's part before it could impose liability upon CCA for negligence and the jury was not properly instructed with regard to his liability. See Aplt. Reply Br. at 11-12.

The Eighth Amendment requires prison officials to "provide humane conditions of confinement," which includes taking "reasonable measures to

guarantee the safety of inmates." See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). An inmate claiming that officials failed to prevent harm first "must show that [she] is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834. Then she must demonstrate that the officials had a "'sufficiently culpable state of mind,'" id. (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1993)) – that is, their acts or omission arose from "deliberate indifference to inmate health or safety." Id. (internal quotation marks and citation omitted). Declining to adopt an objective definition of deliberate indifference, the Farmer Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety." Id. at 837. "'[D]eliberate indifference' is a stringent standard of fault." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not suffice." Id. at 407.

The doctrine of collateral estoppel or issue preclusion applies to § 1983 actions, see Allen v. McCurry, 449 U.S. 90, 105 (1980), but the doctrine requires separate actions, not present here. See Montana v. United States, 440 U.S. 147, 153 (1979); Ashe v. Swenson, 397 U.S. 436, 443 (1970); United States v. Sherman, 912 F.2d 907, 908-10 (7th Cir. 1990). Still, we must be alert to the

potential for inconsistent factual findings in the same proceeding. We may not disregard the unappealed determination of the district court (as a matter of law) and the jury (as a matter of fact) that Plaintiff failed to prove even negligence under state law. That being so, Plaintiff cannot now argue that she should be allowed to establish deliberate indifference (a higher standard of proof) when she could not prove negligence (a lesser standard of proof) as to the same conduct. Stated another way, Ms. Giron is bound, as are we, by the unappealed determinations that neither Warden Newton nor CCA was negligent. Disregarding the jury's determination as to CCA's lack of negligence also would raise serious Seventh Amendment concerns. Cf. Dairy Queen v. Wood, 369 U.S. 469, 479 (1962) (factual issues normally resolved by jury prior to final resolution of equitable claims); Beacon Theatres v. Westover, 359 U.S. 500, 504, 510-11 (1959). Specifically, the jury's special verdict on negligence must be read as rejecting the claim that CCA was negligent in failing to prevent the incident, that it had breached its "duty to exercise reasonable and ordinary care for the protection of the safety and bodily integrity of the person in custody." Aplt. App. 324, 334 (Instruction Nos. 7 & 16). In the circumstances of this case, the elements of negligence are subsumed within deliberate indifference.

Ms. Giron made no endeavor to appeal the jury's determination and the appendices do not contain a trial transcript with any testimony. Ms. Giron's

argument that the jury's determination of CCA's negligence was somehow dependent upon a finding as to Mr. Torrez's liability on the other claims is belied by the jury instructions. Moreover, Ms. Giron does not address the district court's grant of judgment as a matter of law to Warden Newton on the negligence claim. Thus, we are precluded from reviewing the summary judgment determination on count II.

While it is not clear whether Ms. Giron seeks to challenge the disposition of count III, alleging deliberate indifference to her medical needs, she failed to make the requisite showing on this claim to preclude summary judgment. See Fed. R. Civ. P. 56(c). According to our review of the record, CCA provided her with a medical examination and psychological counseling after the alleged rape. See Aplt. App. at 143-45. "[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980). Therefore, summary judgment was appropriate on this claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

II. Consent Instructions

Ms. Giron challenges the consent instructions given by the district court

over her counsel's objection.  See Aple. Supp. App. at 113; Aplt. App. at 301.

Instruction No. 12 stated:

> Consent is willingness in fact for conduct to occur.  It may be manifested by action or inaction and need not be communicated to the actor.
> If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact.

Aplt. App. at 330.  The court informed the jury, in Instruction No. 13, that "effective consent" is consent "by one who has the capacity to consent . . . to the particular conduct, or to substantially the same conduct" and that consent can be exceeded by the defendant or terminated by the plaintiff.  Aplt. App. at 331.

Ms. Giron argues that Instruction Nos. 12 and 13 erroneously required her to prove lack of consent as an element of her case.  In her view, because all of her claims were premised on the allegation that Mr. Torrez raped her, the court should not have instructed the jury that she must prove lack of consent, in addition to rape.

As a threshold matter, we note that Ms. Giron's failure to appeal the adverse special verdict on her battery claim does not prevent us from reviewing Instruction Nos. 12 and 13.  Although lack of consent appears to be an element of battery under New Mexico law, see Sanford v. Presto Mfg. Co., 594 P.2d 1202, 1203 (N.M. Ct. App. 1979), the jury was not so instructed.  To find battery, the court required that (1) "Defendant Torrez touched Plaintiff" and (2) "Defendant

Torrez touched Plaintiff in a rude, angry, or insolent manner." Aplt. App. at 327. Hence, the jury's finding of no battery under this instruction does not conclusively resolve the consent issue.

We consider jury instructions in their entirety and reverse only if we determine that the error was prejudicial in light of the record as a whole. See King v. Unocal Corp., 58 F.3d 586, 587 (10th Cir. 1995). The district court did not make clear which claims its consent instructions encompassed; however, they seem to have referred to both the § 1983 claim and the state-law intentional tort claims.

Ms. Giron contends she was required to prove lack of consent as an element of her § 1983 excessive force claim. However, Instruction No. 7 informed the jury that CCA and Mr. Torrez relied on Ms. Giron's consent as an affirmative defense. See Aplt. App. at 324. The Tenth Circuit has not previously determined whether a prison guard may raise consent as an affirmative defense to a §1983 allegation of this nature, nor is the law clearly established elsewhere. At least one circuit has gone farther than the district court did here – holding that the "inmate must . . . prove, as an objective matter, that the alleged abuse or harassment caused 'pain,'" Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997), and that "welcome and voluntary sexual interactions, no matter how inappropriate, cannot as a matter of law constitute 'pain' as contemplated by the

Eighth Amendment." Id. at 1339; see also Fisher v. Goord, 981 F. Supp. 140, 174 (W.D.N.Y. 1997) ("[C]onsensual sexual interactions between a correction officer and an inmate, although unquestionably inappropriate, and in this Court's view despicable, do not constitute cruel and unusual punishment under the Eighth Amendment."). However, because Mr. Torrez did not cross-appeal, claiming that Ms. Giron should have borne the burden of proving lack of consent as an element of her § 1983 claim, we need not reach the burden of proof issue decided in Freitas.

None of the cases Ms. Giron cites demonstrates that the consent instructions constitute reversible error on her § 1983 claim in this case. State v. Gillette, 699 P.2d 626 (N.M. Ct. App. 1985), and State v. Jimenez, 556 P.2d 60 (N.M. Ct. App. 1976), deal with New Mexico criminal law, rather than federal civil rights claims. A New Mexico statute enacted after Ms. Giron's alleged rape criminalizes sexual penetration of an inmate by a perpetrator "in a position of authority over the inmate," N.M. Stat. Ann. 30-9-11(D)(2), but Mr. Torrez was not charged with criminal sexual penetration or any other crime. Moreover, although both Gillette and Jimenez establish that lack of consent is not an element of criminal sexual penetration in New Mexico, see Gillette, 699 P.2d at 631; Jimenez, 556 P.2d at 63, neither bars a defendant from raising consent as an affirmative defense to that state criminal charge. In contrast to those New

Mexico cases, Ms. Giron's claim of excessive force was plead as forcible rape, necessarily involving lack of consent, and therefore, even if the district court erred in giving Instruction Nos. 12 and 13 (because they might suggest that she was required to prove lack of consent), such error was harmless.

We also reject Ms. Giron's challenge to these instructions with regard to her state-law intentional tort claims. New Mexico's Uniform Jury Instructions do not include an instruction on assault and battery because "there [is] insufficient New Mexico law" on the subject. 3 N.M. Rules Ann. UJI 13-1624 Comm. Cmt. (Michie 1999). However, at least one New Mexico case states: "For there to a be a battery, there must be an unpermitted contact. . . . 'The gist of the action for battery is not the hostile intent of the defendant, but rather the absence of consent to the contact on the part of the plaintiff.'" Sanford, 594 P.2d at 1203 (internal citations omitted) (quoting Prosser, Laws of Torts (4th ed. 1971)). At the very least, "[c]onsent is a defense for intentional torts like assault and battery" under New Mexico law. Yount v. Johnson, 915 P.2d 341, 346 (N.M. Ct. App. 1996). Thus, it was proper to instruct the jury on consent with regard to the intentional tort claims.

Finally, Ms. Giron challenges Instruction No. 12 on the ground that it amounted to a mistake of fact instruction. We first note that the instruction did not refer subjectively to "Mr. Torrez" or "the Defendant," but rather created an

objective standard for "words or conduct [that] are *reasonably* understood by another to be intended as consent." Aplt. App. at 330 (emphasis added). Second, while Ms. Giron argues that she resisted sexual intercourse, she has not submitted a trial transcript. As we stated in <u>King</u>, 58 F.3d at 587, "[i]t is the appellant's responsibility to provide us with a proper record on appeal." Even if Instruction No. 12 did address mistake of fact, we cannot determine whether the evidence at trial supported it. <u>See</u> <u>id.</u> at 587-88. Based on the case law and the sparse record before us, we hold that neither Instruction No. 12 nor No. 13 deprived Ms. Giron of a fair trial.

III. Excessive Force Instruction

Ms. Giron asserts that Instruction No. 8, combined with the court's refusal to give her Proposed Instruction No. 6, required her "to prove not only that Defendant Torrez raped her, but that he did so in an especially perverse manner." Aplt. Br. at 12. Instruction No. 8 stated that, to find Mr. Torrez liable under § 1983 for using excessive force, the jury must find:

> First: that Defendant Torrez forced Plaintiff to have sexual intercourse with him; and
> Second: that the use of force was applied maliciously and for the very purpose of causing harm; and
> Third: as a direct result, Plaintiff was damaged; and
> Fourth: Defendant Torrez was acting under color of state law.

Aplt. App. at 325. Ms. Giron proposed, but the district court declined to give, the

following instruction:

> Sexual abuse of a prisoner by a corrections officer has no legitimate purpose, and is simply not part of the penalty that prisoners must pay.
> If you find that Defendant Torrez forced Plaintiff to have sexual intercourse with him, then you must find that this use of force was excessive and applied maliciously and sadistically for the very purpose of causing harm.

Aplt. App. at 257.

Defendants contend that, because Ms. Giron failed to object to Instruction No. 8 before the jury retired to consider its verdict, she failed to preserve the error for appeal. Rule 51 requires a party to distinctly state the matter to which she objects and the grounds for her objection before the jury retires. See Fed. R. Civ. P. 51; Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 553 (10th Cir. 1999); Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1513 (10th Cir. 1984). A general objection that does not inform the court of the party's grounds for disagreement will not suffice, nor may a party "satisfy the requirements for Rule 51 by merely submitting to the court a proposed instruction that differs from the instruction ultimately given to the jury." Russell v. Plano Bank & Trust, 130 F.3d 715, 718-19 (10th Cir. 1997), cert. denied, 118 S. Ct. 1801 (1998); see Aspen Highlands, 738 F.2d at 1515.

Ms. Giron submitted her Proposed Instruction No. 6 as part of a larger package on July 6, 1998. We have not found, nor has she cited, any part of the

- 15 -

record demonstrating that she tendered the instruction again or objected to the court's refusal to give it before the jury retired. However, the record does indicate that both parties were uncomfortable with the "malicious" language in draft copies of the court's instructions. See Aple. Supp. App. at 111. Ms. Giron's counsel expressed concern about the court's draft instruction 7a, regarding the § 1983 claim, but only in response to opposing counsel's request that the definition of excessive force and "malicious" and "sadistic" conduct be modified. See id. Ms. Giron's attorney also objected to the court's failure to incorporate a definition of criminal sexual penetration as the predicate to the excessive force claim. See id.

Yet, although the trial judge had some notice that Ms. Giron did not approve of the "malicious" language, see id., agreed to redraft No. 7a, and even told the parties to review the instructions with his law clerk, see id. at 112-13, Ms. Giron's lawyer failed to make the type of specific, detailed objection that Rule 51 requires. We take this opportunity to emphasize that, in order to preserve errors for appeal, an attorney must make timely objections to jury instructions with which he disagrees, the refusal to give his proposed instructions, and improper procedures used by the court. Because Ms. Giron's lawyer did not make the requisite objections, we review for plain error. See Russell, 130 F.3d at 721.

We will only reverse under the plain error standard in an exceptional

circumstance – one where the error was "patently plainly erroneous and prejudicial." Aspen Highlands, 738 F.2d at 1516 (internal quotation marks omitted); see Medlock, 164 F.3d at 553. In the instant case, however, we believe the trial court misconstrued the principles underlying the excessive force test articulated by the Supreme Court, see Hudson v. McMillian, 503 U.S. 1 (1992); Whitley v. Albers, 475 U.S. 312 (1986), and its confusing excessive force instruction resulted in fundamental injustice to Ms. Giron. See Medlock, 164 F.3d at 553.

Ordinarily, an excessive force claim involves two prongs: (1) an objective prong that asks "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) a subjective prong under which the plaintiff must show that "'the officials act[ed] with a sufficiently culpable state of mind.'" Hudson, 503 U.S. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991)). The subjective element of an excessive force claim "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21 (internal quotation marks omitted). However, as the Court subsequently made clear, balancing "the need 'to maintain or restore discipline' through force against the risk of injury to inmates" occurs where prison officials were using force to keep order. See Hudson, 503 U.S. at 6.

- 17 -

Here, Mr. Torrez has not asserted that he was trying to discipline Ms. Giron or calm a prison disturbance. By his own admission, he had sex with her and "knew [he] was doing wrong." Aplt. App. at 138. "[L]ike the rape of an inmate by another inmate, sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is 'simply not part of the penalty that criminal offenders pay for their offenses against society.'" Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997) (quoting Farmer, 511 U.S. at 834).

Based on Instruction No. 8, the jury could have decided that Mr. Torrez forced Ms. Giron to have sex with him, but did not apply the force maliciously and with intent to cause harm, and thus he was not liable under § 1983. We are concerned that, unless otherwise instructed, jurors will not view coerced sex between a guard and an inmate as "malicious," even if the guard clearly lacked a valid objective and ignored signs of resistance. Such a result completely disregards both the goal of allowing reasonable prison discipline and case law presuming malicious and sadistic intent if no disciplinary rationale exists. See Boddie, 105 F.3d. at 861 (citing Hudson, 503 U.S. at 6-7); Thomas v. District of Columbia, 887 F. Supp. 1, 4 (D.D.C. 1995) (same); cf. Mathie v. Fries, 935 F.Supp. 1284, 1300 (E.D.N.Y. 1996) (inferring culpable state of mind from alleged conduct in Fourteenth Amendment case involving pre-trial detainee repeatedly abused and sodomized by correctional facility director). Where no

legitimate penological purpose can be inferred from a prison employee's alleged conduct, including but not limited to sexual abuse or rape, the conduct itself constitutes sufficient evidence that force was used "maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21 (internal quotation marks omitted); see Boddie, 105 F.3d. at 861 (citing Hudson, 503 U.S. at 6-7).

Since Ms. Giron had to prove that Mr. Torrez forced her to have sex with him, she should not have faced the additional hurdle of showing that the coercion involved malice under a test primarily designed for a prison guard's use of force to maintain order. We find plain error in Instruction No. 8 because it was confusing and patently prejudicial to the outcome of the excessive force claim.

The grant of summary judgment for CCA and Warden Newton on Ms. Giron's § 1983 "conditions of confinement" claims is AFFIRMED. We also find no reversible error in Instruction Nos. 12 and 13. However, we REVERSE the judgment for Mr. Torrez on the § 1983 "excessive force" claim and REMAND this claim for a new trial.